Filed 3/5/03 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2003 ND 31

Stephen Simpson, Sheri 

Simpson, husband and wife, Plaintiffs and Appellants

and

Justin Simpson, Amanda Simpson, 

and Jeffrey Simpson, all minors, Plaintiffs

v.

Chicago Pneumatic Tool Company,     Defendant and Appellee

and

Residual Materials, Inc.

and Todd A. Clausnitzer,    Defendants

No. 20020171

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Robert V. Bolinske (argued), 515 North 4th Street, Bismarck, N.D. 58501, and Charles T. Edin (appeared), Charles T. Edin, P.C. Law Office, P.O. Box 2391, Bismarck, N.D. 58502-2391, for plaintiffs and appellants.

Thomas H. Fegan (argued), Johnson & Bell, Ltd., 55 East Monroe Street, Suite 4100, Chicago, IL 60603, and Jerome C. Kettleson (appeared), Pearce & Durick, P.O. Box 400, Bismarck, N.D. 58502-0400, for defendant and appellee.

Simpson v. Chicago Pneumatic Tool Co.

No. 20020171

VandeWalle, Chief Justice.

[¶1] Stephen and Sheri Simpson appealed from a judgment dismissing their products liability action against Chicago Pneumatic Tool Company and from an order denying their motion for a new trial.  Simpsons argue the trial court abused its discretion in denying their motion for a new trial and their post-judgment motion to compel the production of all the original surveillance videotape taken by Thomas Twist in July 1997 and September 1999.  We hold the trial court did not abuse its discretion in denying Simpsons’ motions, and we affirm the judgment and order.

I

[¶2] 
In 1996, Simpsons sued Chicago Pneumatic, Residual Materials, Inc., and Todd Clausnitzer.  Simpsons alleged Chicago Pneumatic negligently manufactured pneumatic air tools that were used by Stephen Simpson while he worked at Residual Materials in 1991, and the pneumatic air tools were defective and unreasonably dangerous for the user.  Simpsons alleged Stephen Simpson’s use of the pneumatic air tools caused him serious injuries, including “atypical reflex sympathetic dystrophy, in conjunction with occupational Raynaud’s phenomena.”  Simpsons separately alleged Clausnitzer rear-ended a vehicle driven by Stephen Simpson in 1995, causing aggravation of injuries related to atypical reflex sympathetic dystrophy and occupational Raynaud’s phenomena.  In 1997, the trial court dismissed Simpsons’ claim against Residual Materials under the exclusive remedy provisions of the workers compensation law.  
See
 N.D.C.C. §§ 65-01-08, 65-04-28, and 65-05-

06.  In 1998, Simpsons settled their claims against Clausnitzer.  In April 2000, a jury found Chicago Pneumatic was not negligent, the pneumatic air tools were not defective and unreasonably dangerous, and the pneumatic air tools did not cause Simpsons’ injuries.

[¶3] In response to Chicago Pneumatic’s request for costs, Simpsons questioned whether Chicago Pneumatic had provided them with all of the original surveillance videotape taken by investigator Thomas Twist in July 1997 and in September 1999.  During pretrial discovery, Simpsons had asked Chicago Pneumatic if there were “any photographs, video recordings, or moving pictures related to this case” and to “produce any and all of the aforementioned photographs, video recordings, or moving pictures.”  Chicago Pneumatic answered that it had taken surveillance “[v]ideo of Stephen Simpson at Lake [Sakakawea] and in Ray[, North Dakota] on July 3–4, 1997 and September 3–4, 1999,” and “[a]ll of the photographs and video recording or moving pictures have been disclosed.”  At trial, a videotape recorded on July 3-4, 1997 and on September 3-4, 1999 was introduced into evidence.  

[¶4] After trial, Simpsons’ “suspicions” that Chicago Pneumatic had not provided them with all the original surveillance videotape taken by Twist “were aroused.”  Simpsons moved for a new trial, claiming Chicago Pneumatic had failed to provide them with all the original surveillance videotape.  In conjunction with their motion for new trial, Simpsons moved to depose Twist.  The trial court granted Simpsons’ request to depose Twist, and he testified in his deposition that some videotaping on July 2-4, 1997, and on September 3-4, 1999, had not been provided to Simpsons.  According to Twist, the videotape provided to Simpsons during discovery and introduced at trial did not include all the videotaping he did on July 2-3, 1997 and on September 3, 1999, but Stephen Simpson was not on any of the videotape that had not been provided to Simpsons.  Simpsons moved to compel production of all the original videotapes taken by Twist.  Simpsons claimed the videotape that had been produced in response to their discovery request and introduced at trial was not a true, accurate and complete representation of all the videotape taken during Twist’s surveillance of Stephen Simpson. 

[¶5] The trial court denied Simpsons’ motion to compel production of the original  surveillance videotape, concluding no surveillance videotape of Stephen Simpson had been concealed or withheld.  The court also ruled even if there were additional surveillance videotape of Stephen Simpson, that videotape would not have affected the outcome of the case because it concerned the extent of Simpsons’ damages and the jury found no liability on the part of Chicago Pneumatic.  The court denied Simpsons’ motion for a new trial.

II

[¶6] Chicago Pneumatic has moved to dismiss Simpsons’ appeal, claiming it is moot.  Chicago Pneumatic argues Simpsons’ appeal is moot because the issues raised by them on appeal relate only to damages and the jury found against them on liability.  Chicago Pneumatic argues any alleged error relating to damages is harmless.

[¶7] We will dismiss an appeal if the issues become moot and no actual controversy is left to be decided.  
Ashley Educ. Ass’n v. Ashley Pub. Sch. Dist.
, 556 N.W.2d 666, 668 (N.D. 1996).  Mootness is a threshold issue we decide before reaching the merits of an appeal.  
Bland v. Commission on Med. Competency
, 557 N.W.2d 379, 381 (N.D. 1996).  An appeal is moot when an appellate court is unable to render effective relief due to the lapse of time, or the occurrence of an event before the appellate court renders its decision.  
Id.
  
See
 N.D.R.App.P. 42(c) (“When an issue before the court may have become moot due to a change in circumstance, the parties shall advise the court in writing about the change in circumstance and explain why appeal of the issue should or should not be dismissed”).

[¶8] Chicago Pneumatic’s mootness argument does not raise issues stemming from the lapse of time, or the occurrence of an event after the trial court’s decision and before this Court’s consideration of this appeal.  
See
 
DeCoteau v. Nodak Mut. Ins. Co.
, 2001 ND 182, ¶ 17, 636 N.W.2d 432 (holding satisfaction of judgment rendered appeal moot); 
In Interest of E.T.
, 2000 ND 174, ¶¶ 4, 6, 9, 617 N.W.2d 470 (holding patient’s subsequent release from hospital and termination of involuntary feeding rendered appeal of involuntary medication order moot); 
Ashley
, 556 N.W.2d at 667-

68 (holding conclusion of contract negotiations and issuance of teacher contracts rendered appeal moot).  Rather, Chicago Pneumatic essentially asserts Simpsons’ videotape issue is harmless because the jury decided against them on liability.  Simpsons respond the videotape issue is not harmless and their appeal is not moot, because the videotape was Chicago Pneumatic’s primary piece of evidence at trial and was inextricably tied to the jury’s verdict on liability.  We have said a decision by the trier of fact on one issue may render some issues raised on appeal moot. 
See
 
Praus ex rel. Praus v. Mack
, 2001 ND 80, ¶ 23, 626 N.W.2d 239; 
Brown v. Brown
, 1999 ND 199, ¶ 24, 600 N.W.2d 869; 
Jerry Harmon Motors, Inc. v. First Nat’l Bank and Trust Co.
, 472 N.W.2d 748, 755 (N.D. 1991); 
State v. Brown
, 337 N.W.2d 138, 153 (N.D. 1983).  Here, the parties’ arguments about damages and liability are sufficiently intertwined to preclude potential mootness.  We conclude Simpsons’ appeal is not moot, and we deny Chicago Pneumatic’s motion to dismiss.

III

[¶9] Simpsons argue Chicago Pneumatic’s flagrant violation of the rules of discovery require the production of all of Twist’s original surveillance videotape and a new trial. 

[¶10] A trial court’s discovery decision will not be reversed on appeal absent an abuse of discretion.  
Bertsch v. Duemeland
, 2002 ND 32, ¶ 33, 639 N.W.2d 455.  We also review a trial court’s denial of a motion for a new trial under the abuse-of-

discretion standard.  
Schaefer v. Souris River Telecomms.
, 2000 ND 187, ¶ 14, 618 N.W.2d 175.  An abuse of discretion by a trial court is never assumed and must be affirmatively established.  
US Bank Nat’l Ass’n v. Arnold
, 2001 ND 130, ¶ 23, 631 N.W.2d 150.  A trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably, when its decision is not the product of a rational mental process leading to a reasoned determination, or when it misapplies or misinterprets the law.  
Schaefer
, at ¶ 14.

[¶11] Here, in denying Simpsons’ motion to compel production of the original surveillance videotape and their motion for a new trial, the trial court said:

I think the easy thing to do for me here would be simply to say I’m granting the motion, give them all the tapes, but I’ve read everything and I’ve re-read basically the entire file before this hearing, and I’m just—I don’t 
believe that if tapes exist—well first of all, I want to say that, again we might be getting into a semantic argument, but it’s my opinion that [Chicago Pneumatic] complied with the Court’s order as the Court wrote the order, and maybe I should have been less specific in the order and just should have said give them all the video tapes and let them decide.  But the order did say relevant or related, I don’t know the exact wording, but having to do with Stephen Simpson, and I think a logic common sense reading of that is that if tapes showed Mr. Simpson that they should be turned over, and reading Mr. Twist’s deposition, I don’t believe that there’s any evidence that—tapes that showed Mr. Simpson exists that have been concealed or withheld from [Simpsons].  If there are such tapes, I’m not convinced that there’s any evidence that whatever they were showing Mr. Simpson doing, would result in a new trial.  As [counsel for Chicago Pneumatic] pointed out, there would have to be some significant material, new evidence or change in the evidence in order for the Court to grant a new trial.  And, you know, it would be against speculation to try and read the jury’s mind as to what they felt was significant or not significant, but the simple fact is is that we didn’t even get to the issue of damages which would be in essence how serious Mr. Simpson’s claimed injuries are.  We didn’t even get to that point.  The jury decided that there hadn’t been anything that happened to Mr. Simpson that was the fault of [Chicago Pneumatic].  So based on the deposition, or the, ya, the deposition taken of Mr. Twist, and what tapes exist, I first of all think that [Chicago Pneumatic has] been in compliance with the Court’s order regarding what they were suppose to turn over to [Simpsons].  And secondly I think that there isn’t anything that establishes that grounds for a new trial would be able to be produced or raised even, and I’m starting to get repetitive, but even if those tapes showed something more, so.  I believe [Simpsons’] motion to compel is denied.

I guess that leaves pending still the motion for a new trial, and my understanding, and somebody can correct me if I’m wrong, but my understanding was that the, and I made a note of this, on February 2nd, 2001, [Simpsons] had indicated that they were not pursuing any issues except the video tape issue.  So based on my ruling, it would appear to me that there isn’t anything else upon which [Simpsons] could base their request for a new trial.  So, I mean, if you want to address that, I certainly would be happy to hear any arguments, but unless I hear something else, I’m going to deny the motion for a new trial as well.

[¶12] The trial court’s decision was the product of a rational mental process leading to a reasoned decision and was not based on a misapplication of the law.  The court found Chicago Pneumatic had not failed to disclose any videotape that showed Stephen Simpson.  Simpsons were not precluded from fully examining Twist during his deposition, and Twist testified during his deposition that although he took additional surveillance videotape that had not been provided to Simpsons, Stephen Simpson was not on any of that videotape.  

[¶13] During discovery and the post-trial proceedings, Chicago Pneumatic initially claimed all the videotape had been provided to Simpsons, but Chicago Pneumatic’s counsel eventually explained to the trial court that all the videotape had not been provided to Simpsons because they had “never asked for all unedited, unabridged video tapes ever taken.  [They] said related to this case.  And straight from your order, surveillance of Stephen Simpson.”
  Chicago Pneumatic’s discovery responses and post-trial statements about the surveillance videotape are less than candid and are not consistent with the underlying purposes of discovery to clarify issues, eliminate surprises, and achieve truth.  
See
 6 James Wm. Moore, et al., 
Moore’s Federal Practice
 ¶ 26.02 (3rd ed. 2002).  We do not condone Chicago Pneumatic’s responses and conduct.  On this record and in this post-trial posture, however, we are not persuaded the trial court acted arbitrarily, unconscionably, or unreasonably in denying Simpsons’ motion to compel production of all the original surveillance videotape and in denying Simpsons’ motion for a new trial.  The court therefore did not abuse its discretion.

IV

[¶14] We affirm the judgment and order.

[¶15] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom